Jasen, J.
Wilbert Davis, a heroin addict, has been convicted of criminal possession of a dangerous drug in the sixth degree and criminal possession of a hypodermic instrument and sentenced to a conditional discharge. On this appeal from affirmance of his conviction by the Appellate Term the sole question is whether,. consistent with Federal and State constitutional proscriptions against cruel and unusual punishment, criminal penalties may be imposed on a narcotic addict who possesses narcotics and associated instruments for his own use.
The facts are undisputed. On February 4, 1971, the landlord of the premises at 34 Fort Green Place, Brooklyn, approached a uniformed patrolman on duty in the area. He led the officer to that address, a three-story “ walk-up ”, and permitted him to enter. The officer ascended one flight of stairs and: observed the defendant standing in a bathroom, about to inject himself with a syringe later determined to contain heroin. When approached by the officer, the defendant pleaded with him to be allowed to take the injection. In effecting the arrest, the *223 officer observed fresh needle marks on defendant’s right arm. ■Defendant admitted that he had been using heroin for about a year and one-half!
At trial, the defendant offered evidence designed to show the nature of narcotic addiction and that he was, in fact, a narcotic addict. The defendant conceded his addiction to heroin and this concession was amply supported by medical testimony not disputed by the People.
The argument for reversal is predicated on Robinson v. California (370 U. S. 660) and Powell v. Texas (392 U. S. 514). In Robinson, the petitioner was convicted under a California statute making it a criminal offense for a person to be addicted to narcotics. The Trial Judge instructed the jury that it was a misdemeanor under the statute ‘ ‘ ‘ either to use narcotics, or to be addicted to the use of narcotics ’ ’ ’, that the 1 ‘ ‘ portion of the statute referring to “ addicted to the use ” of narcotics is based upon a condition or status ’ ”, and that “ ‘ [i]t is a continuing offense ’ ” which “ 1 subjects the offender to arrest at any time before he reforms. ’ ” (370 U. S., at pp. 662-663.)
The Supreme Court reversed. Implicitly recognizing that, narcotic addiction is a disease, the court held that a State law making the “ status ” of narcotic addiction a criminal offense inflicted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. By way of rationale, the court emphasized the absence of an actus reus, that under the statute the criminal sanction was imposed even though a person has “ never touched any narcotic drug within the State or been guilty of any irregular behavior there ” (370 U. S., at p. 667). The court was careful to point out, however, that the States retained broad power to regulate narcotic drugs traffic within their borders. Such regulation, it said, could take a variety of valid forms, citing, by way - of example, the power to impose criminal sanctions against the unauthorized sale, manufacture, purchase or possession of narcotics. (370 U. S., at p. 664.)
In dissent, Justice Whíte voted to affirm the conviction, being of the view that the appellant was not being punished on the basis of status, illness or condition, but for the regular and habitual use of narcotics in violation of California law. In dicta, particularly pertinent here, he observed: “ If it is ‘ cruel and unusual punishment ’ to convict appellant for addiction, *224 it is difficult to understand why it would be any less offensive to the Fourteenth Amendment to convict him for use on the same evidence of use which proved he was an addict. It is significant that in purporting to reaffirm the power of the States to deal with the narcotics traffic, the Court does not include among the obvious powers of the State the power to punish for the use of narcotics. I cannot think that the omission was inadvertent.” (370 TJ. S., at p. 688.)
In Powell v. Texas (supra), the Supreme Court faced the task of clarifying the rationale of its Robinson decision. But as the opinions filed therein indicate, the court was divided as to the rationale of Robinson. In Powell, the court was asked to extend Robinson by prohibiting a State from punishing a chronic alcoholic for public drunkenness. Leroy Powell was convicted of violating a Texas statute declaring it unlawful to “ ‘ get drunk or be found in a state of intoxication in any public place ’ ”. (392 TJ. S., at p. 517.) The Trial Judge, sitting without a jury, made certain “ ‘ findings of fact’”: that “ * chronic alcoholism is a disease which destroys the afflicted person’s will power to resist the constant, excessive consumption of alcohol ’ that “ ‘ a chronic alcoholic does not appear in public of his own volition but under a compulsion symptomatic ’ ” of his disease; and that Powell was afflicted with the disease as described. (392 TJ. S., at p. 521.)
■ The Supreme Court affirmed. The plurality opinion per Justice Marshall, rejecting the trial court’s findings of fact, observed that one could not “ conclude, on the state of this record or on the current state of medical knowledge, that chronic alcoholics in general, and Leroy Powell in particular, suffer from such an irresistable compulsion to drink and to get drunk, in public that they are utterly unable to control their performance of either or both these acts and thus cannot be deterred at all from public intoxication.” (392 U. S., at p. 535.) Robinson was distinguished on the ground that Powell was not convicted for being a chronic alcoholic, but for being in public while drunk. Unlike Robinson, the sanctions; of the Texas statute were not directed at “ mere status ”, but at socially offensive behavior — appearing in public drunk.
In a dissent joined by three Justices, Justice Fobtas adopted the trial court’s findings and viewed the Texas statute as impos *225 ing punishment for the “ mere condition of being intoxicated in public ” (emphasis in original) and read Robinson as barring the imposition of criminal sanctions “ upon a person for being in a condition he is powerless to change.” (392 TJ. S., at pp. 559, 567.) As, a corollary, Justice Fortas declared that “ a person may not [consistent with the Eighth Amendment] be punished if the condition essential to constitute the defined crime is part of the pattern of his disease and is occasioned by a compulsion symptomatic of the disease.” (392 TJ. S., at p. 569.) Justice White, although concurring for affirmance on the narrow ground that Powell had failed to prove that he was compelled by his disease to be drunk in public, apparently agreed with much of Justice Fortas’ analysis of the criminal responsibility issue. He observed: “ If it cannot be a crime to have an irresistible compulsion to use narcotics, Robinson v. California, 370 U. S. 660, rehearing denied 371 U. S. 905 (1962), I do not see how it can constitutionally be a crime to yield to such a compulsion. Punishing an addict for using drugs convicts for addiction under a different name. Distinguishing between the two crimes is like forbidding criminal conviction for being sick with flu or epilepsy but permitting punishment for running a fever or having a convulsion; Unless Robinson is to be abandoned, the use of narcotics by an addict must be beyond the reach of the criminal law. Similarly, the chronic alcoholic with an irresistable urge to consume alcohol should not be punishable for drinking or for being drunk.” (392 U. S., at pp. 548-549.)
The principle underlying the prohibition of “ cruel and unusual punishment ” may be traced to the Magna Carta. The phrase itself, however, first appeared in the English Bill of Rights of 1688. In 1776 it was incorporated into the Virginia Declaration of Rights and James Madison included it in the constitutional amendments that he drafted in 1789. It was approved by Congress with little debate and in 1791 was incorporated into the Constitution as part of the Eighth Amendment. (Note, The Effectiveness of the Eighth Amendment: An Appraisal of Cruel and Unusual Punishment, 36 N. Y. U. L. Rev. 846; Note, The Constitutional Prohibition Against Cruel and Unusual Punishment — Its Present Significance, 4 Vand. L. Rev. 680.) Since adoptipn of the Federal Constitution, similar proscrip *226 tians have been written into virtually every State Constitution, our own in 1846. (N. Y. Const, of 1846, art. I, § 5; see People, etc rel. Kemmler v. Durston, 119 N. Y. 569, 576.)
Doubtless enacted to preclude the barbarities that had marred the administration of the English criminal law — burnings, brandings, quarterings, disembowelings and the like — the amendment has coihe to mean much more. Prohibited are not only inhuman methods of punishment, but punishment disproportionate to the offense (Weems v. United States, 217 U. S. 349; Trop v. Dulles, 356 U. S. 86 [opn. of the Chief Justice].) and, in light of Robinson, punishment of “ status ” or “ a condition ” such as narcotics addiction. Although numerous older cases had held that the Eighth Amendment itself did not limit State power (e.g., Ughbanks v. Armstrong, 208 U. S. 481; In re Kemmler, 136 U. S. 436), it is now settled that the prohibition against cruel and unusual punishment is applicable to the States through the due process clause of the Fourteenth Amendment. (Robinson v. California, 370 U. S., at p. 666; see, also, Francis v. Resweber, 329 U. S. 459; Furman v. Georgia, 408 U. S. 238.)
Implicit in defendant’s argument that it constitutes cruel and unusual punishment to impose a criminal penalty upon an addict who possesses narcotics and associated paraphernalia for his own use, is an appeal for judicial recognition of a drug dependence defense to criminal'responsibility (see United States v. Moore, 486 F. 2d 1139, cert. den. 94 S. Ct. 298), an argument better addressed, at this juncture, to the Legislature.* Doubtless, the argument is logically appealing that if an addict cannot, consistent with the Federal and State Constitutions, be punished for being in the status or condition of addiction, he cannot be punished for the acts of possessing for his personal use narcotics and associated instruments — the necessary incidents of his Condition — which acts are realistically inseparable from the status or condition itself.
*227 There is, however, no square holding for defendant’s position that acts incident to addiction may not be punished. Robinson did not so hold. Indeed it is authority for the proposition that actual behavior may be punished but not the condition or status of addiction itself. (See, particularly, Powell v. Texas, 392 U. S., at pp. 541-542 [Black, J., concurring]; see, also, Moore v, United States, supra; People v. Nettles, 34 Ill. 2d 52, 56, cert. den. 386 U. S. 1008.) Support for defendant’s position weaves in and out of the opinions of Justice White in Robinson and Powell and Justice Fortas in Powell. But it is unmistakably clear that the majority in Powell recoiled from the asserted Eighth Amendment claim and the recognition of new lines of defense to criminal accountability by reason of the compulsions attributable to alcoholism, and presumably narcotic addiction, conditions from which it is still widely assumed, rightly or wrongly, that the victim retains some capacity to extricate himself. And there is force to the view that if Robinson and Powell are to be so extended, interpreted and enshrined in Eighth Amendment constitutional law with all the attendant and far-reaching ramifications for common-law doctrines of criminal accountability, the step should be taken by the Supreme Court. (United States v. Moore, 486 F. 2d, supra, at p. 1153.)
Nor should a different analysis and result prevail under the State Constitution (art. I, § 5). The ramifications of recognizing the asserted cruel and unusual punishment defense, and impliedly the defense of drug dependence, are startling. The difficulty lies in knowing where to stop. The obvious danger is that the defense will be extended to other crimes — robberies, burglaries and the like — which can be shown to arise from the compulsive craving for drugs. And if “ mere purchase or possession ” by the addict for his own use is protected, what of the “mere sale ” to the same addict by an obliging trafficker in illicit drugs? Could not the sale to the addict who is driven to acquire drugs by his compulsive craving be defended as a humane act inflicting no harm on other members of society?
Moreover, any attempted limitation on the availability of the drug dependence defense to those acts such as purchase, possession or receipt of narcotics for the addict’s personal use, finds little justification in the cruel and unusual punishment clause with which it intertwines. For example, assuming the drug *228 dependence defense be recognized, is it somehow less offensive to contemporary concepts of human decency, as embodied in the constitutional proscription of cruel and unusual punishment {Trop v. Dulles, 356 U. S., at p. 101) to. punish an addict who, out of a compulsive craving for drugs, steals to fund his habit than it is to punish an addict who, out of the same craving, merely purchases or possesses illicit drugs for his own use? If • the compulsion is the same, why is the one act blameworthy and not the other? Such a distinction smacks of limitation by fiat and invites accusations of arbitrariness. (See Powell v. Texas, 392 U. S., at p. 534 [opn. of Marshall, J.]; see, also, The Supreme Court, 1967 Term, 82 Harv. L. Rev. 63,109.)
We have previously alluded to the role of the Legislature in the deterrence and elimination of illicit drug trafficking in this State and the rehabilitation of those damaged thereby. In the words of the Governor, ‘ ‘ every possible approach to stop addiction ” has been tried. (Annual Message of the Governor, McKinney’s Session Laws of N. Y. [1973], p. 2318.) Indeed, the Legislature again moved vigorously in this field during the 1973 session. (E.g., L. 1973, ohs. 275-278.) Reasons of policy and power, therefore, dictate that we move with caution and restraint in adjudicating defendant’s claim of cruel and unusual punishment with its attendant logical implications for a constitutionally required minimum standard of criminal responsibility.
Moreover, while it may be that the policy of rehabilitation would be well-served by affording addicts a cruel and unusual punishment and drug dependence defense to possession for their own use, we should not lose sight of the utility of such penalties to law enforcement. For example, these possible penalties may, through the exercise of prosecutorial discretion, enable law enforcement to enlist addict-informers in ferreting out the wholesalers of illicit drugs, thereby facilitating the policy of elimination of the drug traffic. Then, too, punishment may persuade some addicts to undertake rehabilitation through various State or private programs. On the other hand, recognition of the defense might conceivably make the addict the witting or unwitting tool of the drug trafficker.
In sum, recognition of defendant’s constitutional claim and implicitly, at least, the drug dependence defense, does not follow *229 inexorably from the Robinson and Powell decisions and, indeed, strong reasons of public policy militate against any such recognition by this court.
The order of the Appellate Term should be affirmed.
Judges Burke, Breitel, Gabrielli, Jones and Wachtleb concur; Chief Judge Fuld taking no part.
Order affirmed.

 The drug dependence defense would appear to be premised on the theory that addiction involves a compelling' propensity to use narcotics, amounting to. a loss of self control, depriving the addict’s acts of possession and use, etc., of volition, a theory about which debate rages. (See United States v. Moore, 486 F. 2d 1139, 1144-1154 [opn. of Wilkey, J.].)