[981 NE2d 265, 957 NYS2d 669]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TYRONE WATSON, Appellant.

Argued October 16, 2012; decided November 29, 2012

## POINTS OF COUNSEL

*Steven Banks, Legal Aid Society, Criminal Appeals Bureau,* New York City (*Natalie Rea* of counsel), for appellant. The trial court erred in refusing to consider the requested agency defense to the charge of criminal facilitation, mandating reversal of the judgment and dismissal of that charge. (*Abuelhawa v United States,* 556 US 816; *United States v Sawyer,* 210 F2d 169; *People v Lam Lek Chong,* 45 NY2d 64; *People v Roche,* 45 NY2d 78; *People v Argibay,* 45 NY2d 45; *People v Manini,* 79 NY2d 561; *People v Gray,* 86 NY2d 10; *People v Feingold,* 7 NY3d 288; *People v Dreyden,* 15 NY3d 100; *People v Burwell,* 53 NY2d 849.)

*Richard A. Brown, District Attorney,* Kew Gardens (*Sharon Y. Brodt* and *John M. Castellano* of counsel), for respondent. Defendant's claim that the verdict was repugnant is unpreserved for appellate review and without merit. (*People v Carter,* 7 NY3d 875; *People v Alfaro,* 66 NY2d 985; *People v Satloff,* 56 NY2d 745; *People v Muhammad,* 17 NY3d 532; *People v Santos,* 86 NY2d 869; *People v Graves,* 85 NY2d 1024; *People v Feingold,* 7 NY3d 288; *People v Ortiz,* 76 NY2d 446; *People v Lam Lek Chong,* 45 NY2d 64, 439 US 935; *People v Argibay,* 45 NY2d 45.)

## OPINION OF THE COURT

GRAFFEO, J.

Defendant Tyrone Watson took an undercover police officer to meet a drug dealer, handled the cocaine transaction for the officer and then gave him the drugs. For these acts, defendant was

charged with selling cocaine, facilitating the sale and possessing narcotics. At trial, defendant claimed that he was not guilty of the sale or facilitation counts because he was acting as the agent of the buyer. The trial court acquitted defendant of the sale under an agency theory, but convicted him of facilitation and possession. We must now determine whether a claim of agency may be interposed as a defense to the crime of facilitating a drug sale.

I

Legislative efforts to combat drug abuse in New York date back to the 1800s (*see* Thomas M. Quinn & Gerald T. McLaughlin, *The Evolution & Present Status of New York Drug Control Legislation*, 22 Buff L Rev 705, 709 [1972-1973]). Criminal liability for the sale and possession of cocaine was first imposed in the early twentieth century (*see id.* at 711-712). During the next 50 years, the federal government and state legislatures increasingly relied on penal statutes to stem the tide of narcotics addiction (*see id.* at 713-732). By the early 1970s, a growing consensus recognized that earlier deterrence efforts were not effective and that new approaches were needed (*see* Interim Rep of Temp St Commn to Evaluate the Drug Laws, 1972 Legis Doc No. 10 at 7, 58). Proposals for change ran the gamut from legalization to more punitive criminal sanctions (*see id.* at 58).

The latter strategy was embraced by Governor Nelson Rockefeller, who believed that New York had unsuccessfully "tried every possible approach to stop addiction and save the addict through education and treatment" (Annual Message of the Governor, 1973 McKinney's Session Laws of NY at 2318, quoted in *People v Davis*, 33 NY2d 221, 228 [1973], *cert denied* 416 US 973 [1974]). At the same time, the legislature was grappling with what it "found to be a high recidivism rate in drug-related crimes, an inadequate response to less severe punishment, and an insidiously growing drug abuse problem" (*People v Broadie*, 37 NY2d 100, 114 [1975], *cert denied* 423 US 950 [1975]). It accepted the Governor's plan and a series of bills were passed that came to be known as the "Rockefeller Drug Laws" (*see* L 1973, chs 276, 277, 278, 676, 1051).

The centerpiece of the new laws was a "radical restructuring of not only drug laws but of sentencing statutes as well" (Albert M. Rosenblatt, New York's New Drug Laws & Sentencing Statutes at v [Law Journal Press 1973]). In adopting harsher consequences for the sale and possession of illegal drugs, New

York's statutory penalties became the most stringent in the nation and narcotics crimes were punished "more severely and inflexibly than almost any other offense in the State"—elevating many of them to the status shared by second-degree murder, first-degree kidnapping and first-degree arson (*People v Broadie*, 37 NY2d at 115). Specifically, mandatory indeterminate life sentences were imposed "in all narcotic drug sales or transfers, however small, and for possession of over one eighth of an ounce" (Albert M. Rosenblatt, New York's New Drug Laws & Sentencing Statutes at v). Although the statutory minimums ranged from one year to 25 years (depending on the quantity of drug sold or possessed), the concept of an indeterminate life sentence meant that defendants who were released on parole were subject to supervision for the remainder of their lives.

In addition to the increased penalties, the preexisting Penal Law definition of the term "sell" resulted in certain persons, who would not ordinarily be considered drug dealers, being swept within the life-imprisonment provisions of the Rockefeller Drug Laws (*see generally* Arnold D. Hechtman, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 220.00 at 13 [1980]). This occurred because the term "sell" was defined as covering not only a traditional sale or exchange for consideration, but also to "give or dispose of to another, or to offer or agree to do the same" (Penal Law § 220.00 [1]; *cf.* Penal Law of 1909 § 1751). Consequently, "any form of transfer of a controlled substance from one person to another"—no matter how minuscule the amount and regardless of whether there was a profit—was treated as a drug sale that could land the offender in prison for life (William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 220.00 at 22). In theory, this broad definition of "sell" included anyone who, upon request, offered to procure a small quantity of narcotics for another individual as a favor or without an expectation of personal benefit.

Defendants who became ensnared in this definitional net and faced charges of criminal sale of a controlled substance borrowed an "agency defense" theory that had been successfully used in criminal prosecutions during Prohibition (*see e.g. State v Lynch*, 81 Ohio St 336, 90 NE 935 [1910]). The "agency" doctrine was premised on the concept that a "person who acts solely as the agent of a buyer in procuring drugs for the buyer is not guilty of selling the drug to the buyer, or of possessing it with intent to sell it to the buyer" (William C. Donnino, Practice

Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 220.00 at 33).

This Court endorsed the agency defense in the context of a drug sale in *People v Lam Lek Chong* (45 NY2d 64 [1978], *cert denied* 439 US 935 [1978]). We observed that the sale of controlled substances was treated more harshly than possession and that there "are certain cases where the defendant's mere delivery of the drugs does not appear to involve the same degree of culpability, or warrant the extreme penalties, associated with pushing drugs" (*id.* at 72). We further reasoned that when the legislature drafted the definition of "sell," it was presumably aware of the earlier decisional law that recognized agency as a defense to the sale of illegal substances; yet, the legislature did not evince an intent to require the courts to abandon application of the defense (*see id.* at 73-74). We therefore held that the agency defense could be asserted in a drug sale case, which required the finder of fact to determine the extent of an intermediary's criminal liability, either as a seller or a purchaser for another (*see id.* at 74). To reach that conclusion, we indicated that the jury should consider

> "the nature and extent of the relationship between the defendant and the buyer, whether it was the buyer or the defendant who suggested the purchase, whether the defendant has had other drug dealings with this or other buyers or sellers and, of course, whether the defendant profited, or stood to profit, from the transaction" (*id.* at 75).

In three cases decided on the same day as *Lam Lek Chong*, we further explained that an agency defense (1) must be charged to the jury if any reasonable view of the evidence supports it (*see People v Roche*, 45 NY2d 78, 86 [1978], *cert denied* 439 US 958 [1978]); (2) cannot be used by a person who acts "at the very least as a middleman or a broker for his supplier" (*People v Argibay*, 45 NY2d 45, 50 [1978], *cert denied sub nom. Hahn-Diguiseppe v New York*, 439 US 930 [1978]); and (3) does not apply to a drug possession charge (*see People v Sierra*, 45 NY2d 56, 58 [1978]). The harshness of the sentences that were imposed under the Rockefeller Drug Laws have been mitigated (*see e.g. People v Acevedo*, 14 NY3d 828, 831 [2010]; *People v Utsey*, 7 NY3d 398, 401 [2006] [both discussing the Drug Law Reform Act of 2004 (L 2004, ch 738)]), but the agency defense nevertheless continues to provide a means of determining the extent of the intermediary's culpability as either a buyer or

seller of narcotics (*see generally People v Davis*, 14 NY3d 20, 24 [2009]). Surprisingly, in more than 30 years since our Court recognized the agency doctrine, we have not had occasion to consider whether it applies similarly to a charge of criminal facilitation.

## II

At approximately 7:00 p.m. on July 24, 2007, an NYPD narcotics unit arrived at a location in Queens. Acting as an undercover buyer, a narcotics sergeant approached defendant Tyrone Watson and asked him where he could find some "rock." Defendant inquired how much he wanted and the officer stated that he had $40. Defendant indicated that he knew how to obtain cocaine and used a pay phone to place a call. When no one answered, defendant called another number but was again unsuccessful. Defendant then remarked "we can go to my boy's house on 123[rd] Street and Sutphin Boulevard." Defendant suggested that they take a bus and offered to pay the officer's fare.

While en route, the officer gave defendant $40 in pre-recorded buy money. About 10 minutes later, the pair got off the bus and walked to a location where they encountered "JD Blue." Defendant gave him a hug, introduced the officer as "my man" and said that his companion "want[ed] two fat ones" before handing over the buy money to JD Blue.

The three men then entered a building and JD Blue left the other two alone for a few minutes. When JD Blue returned, he gave defendant two ziplock bags containing crack and defendant passed them to the officer. Defendant asked to smoke the drugs with the officer but was rebuffed and the officer departed with the cocaine. Defendant and JD Blue were arrested a short time later by a uniformed officer after the undercover positively identified the men. Defendant had two bags of cocaine and a crack pipe on his person. The drugs that defendant procured tested positive as cocaine.

As a result of his involvement in the drug transaction, defendant was indicted for felony sale of a controlled substance in the third degree, as well as misdemeanor charges for criminal possession of a controlled substance in the seventh degree and criminal facilitation in the fourth degree. JD Blue was charged,

as a codefendant, with criminal sale in the third degree.[1] Defendant opted for a bench trial in Supreme Court.

At the end of the People's case, defense counsel moved to dismiss the sale count, asserting an agency defense. The court denied the motion but eventually decided that it would consider the agency doctrine during its deliberations. In her summation, defense counsel maintained that the application of agency negated the sale count, and also stated,

> "The charge of criminal facilitation is on the indictment. It's my argument that the agent of a buyer is no more guilty of facilitating the sale than a lone buyer since he would take the place of the buyer."

Supreme Court found defendant not guilty of the felony sale count upon its determination that the People did not disprove the agency defense beyond a reasonable doubt. Defendant was, however, convicted of the misdemeanor facilitation and possession charges.

The Appellate Division, Second Department, affirmed (82 AD3d 1276 [2011]). It concluded that there was no indication that the trial court failed to consider the agency defense with respect to the facilitation count, and it viewed defendant's argument as a veiled claim of a repugnant verdict based on the fact that defendant was acquitted of the sale but convicted of facilitation. However, the Appellate Division found the repugnancy challenge to be unpreserved and it declined to review the merits of such claim.

A Judge of this Court granted leave to appeal (18 NY3d 862 [2011]) and we now affirm, albeit for reasons different than those stated by the Appellate Division.

### III

Defendant argues that he should have been acquitted of criminal facilitation once the trial court determined that the People failed to disprove the agency defense. He contends that the factual finding that he acted as the agent of a drug purchaser necessarily establishes that he acted solely in the interest of the buyer and not on behalf of the seller. In opposition, the People assert that the agency defense is relevant only to a charge of selling drugs and that it is possible for a person to act as the

---

1. JD Blue was acquitted by a jury.

buyer's agent while simultaneously aiding the seller's ability to consummate a transaction.[2]

As relevant in this appeal, a person commits the crime of criminal facilitation in the fourth degree "when, believing it probable that he is rendering aid . . . to a person who intends to commit a crime, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit a felony" (Penal Law § 115.00 [1]). The purpose of this provision is to assign criminal culpability to an individual who "knowingly aid[s] the commission of a crime" but "does not necessarily possess the 'mental culpability' required for the commission of the crime and is therefore not within the statutory definition of an accomplice" (William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 115.00 at 180). Hence, the fact that the "defendant himself is not guilty of the felony [drug sale] which he facilitated because he did not act with the intent or other culpable mental state required for the commission thereof" is not a defense to facilitation (Penal Law § 115.10 [3]).

From a textual perspective (see e.g. People v Suber, 19 NY3d 247, 252 [2012]), the facilitation statute plainly was intended to cover the type of conduct engaged in by defendant: he brought the undercover officer to JD Blue and provided the dealer with the opportunity to intentionally sell cocaine, thereby aiding the commission of that felony (see Penal Law § 115.00 [1]). This view of the statute's purpose is consistent with the ordinary meaning of "facilitate," which commonly refers to "the efforts of someone other than a primary or necessary actor in the commission of a substantive crime" (Abuelhawa v United States, 556 US 816, 820 [2009])—that is, a third party like defendant who was integral to the drug transaction (cf. People v Gordon, 32 NY2d 62, 65-66 [1973]). In addition, the "agency defense is a well-established interpretation of the statutory definition of the term 'sell' " (People v Davis, 14 NY3d at 24 [internal quotation marks omitted]; see People v Andujas, 79 NY2d 113, 117 [1992]; People v Ortiz, 76 NY2d 446, 448-449 [1990]). However, "sale"

---

**2.** Unlike the Appellate Division, we conclude that this issue is preserved for review. In the factual context of this bench trial, defense counsel's specific assertion that "the agent of a buyer is no more guilty of facilitating the sale than a lone buyer since he would take the place of the buyer" was sufficient to bring the legal issue to the trial court's attention prior to deliberations (see CPL 470.05 [2]).

or "sell" are not components of facilitation (*see* Penal Law § 115.00 [1]). As Penal Law § 115.10 (3) specifically states, the fact that defendant was neither an accomplice to the sale nor guilty of that crime does not provide a defense to facilitation.[3]

There are at least several additional reasons why agency is not a defense to facilitating a drug sale. As discussed earlier, the underlying purpose of the agency doctrine was to reduce the criminal culpability of a buyer's agent from a serious felony punishable by a mandatory indeterminate life sentence to the more lenient punishments imposed for possessory offenses (*see People v Ortiz*, 76 NY2d at 449). Here, in contrast, defendant's facilitation and possession offenses are both classified as class A misdemeanors, so the "calibration of punishment set by the legislature" (*Abuelhawa v United States*, 556 US at 820) is balanced and application of the agency doctrine is not required as a matter of fundamental fairness.[4] We have also recognized that the "agency defense is not a complete defense" (*People v Lam Lek Chong*, 45 NY2d at 74) because "it acknowledges [the] defendant's wrongdoing" in participating in a drug deal (*People v Davis*, 14 NY3d at 24). It would be incongruous to allow a facilitator, who clearly acts as the buyer's conduit to the drug seller and actively participates in the consummation of the transaction, to escape all criminal liability as long as that person never touches the drugs. In short, such a fact pattern presents a classic example of criminal facilitation under the Penal Law.

Based on the plain language of the facilitation statutes and the historic rationale underlying the agency doctrine, we hold that agency may not be interposed as a defense to a charge of criminal facilitation. Defendant was therefore properly convicted of that offense.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN (dissenting). The "thrust" of New York

---

3. The main flaw in the dissent's analysis is that it does not properly consider the actual language of the governing statutes or recognize that the agency doctrine is premised on an interpretation of a term of art—"sell"—that is not an element of facilitation's statutory definition. Moreover, the fact that a buyer cannot be convicted of facilitation (*see e.g. Abuelhawa v United States*, 556 US at 820) is not dispositive regarding the culpability of a third party—defendant in this case—without whom the drug sale would not have been possible.

4. Although defendant was convicted of both facilitation and possession, he was effectively sentenced to "time served" when Supreme Court imposed concurrent one-year jail terms.

statutes, as "consistently construed, is not directed against purchasers" (*People v Roche*, 45 NY2d 78, 82-83 [1978], *cert denied* 439 US 958 [1978]), and buyers are not considered accomplices of the seller despite their "key position in the drug cycle" (*People v Lam Lek Chong*, 45 NY2d 64, 73 [1978], *cert denied* 439 US 935 [1978]). Likewise, the agency defense originated due to the understanding that leniency should be shown to low-level conduits, acting on behalf of purchasers with limited intent, and who are assuredly not "tycoons of the trade" (*see Lam Lek Chong*, 45 NY2d at 74). We recognized in *Roche* that buyers' agents may not be "motivated by a criminal disposition" but rather are often gripped by addiction or attempting "to aid one so afflicted" (45 NY2d at 83). Therefore, these policy concerns militate in favor of the conclusion that the agency defense applies to criminal facilitation of a drug sale.

The majority finds that the agency defense applies only to a criminal sale and not to facilitation because of the harsh penalties imposed for selling narcotics under the Rockefeller Drug Laws, while facilitation is only a misdemeanor. The fact that facilitation is not a felony should not alter our analysis. While the stringent and inflexible penalties for the sale of drugs may have been the impetus for preserving the agency defense, the defense both predated the imposition of the Rockefeller Drug Laws (*see Lam Lek Chong*, 45 NY2d at 73) and survived their mitigation by the Drug Law Reform Act (*see* majority op at 186-187). The severity of the punishment does not change the underlying rationale for the agency defense. We stated plainly in *Roche* that "an individual who participates in such a transaction solely to assist a buyer and only on his behalf, incurs no greater criminal liability than does the purchaser he aids and from whom his entire standing in the transaction is derived" (45 NY2d at 83). Where a court has determined that defendant acted solely in the interests of the buyer, as here, he cannot be guilty of also aiding the seller.

The defendant here was acquitted of a narcotics sale by the trial court on the express basis that defendant was an agent of the buyer. The U.S. Supreme Court found that a buyer does not "facilitate" a drug transaction (*Abuelhawa v United States*, 556 US 816, 819-820 [2009]), and a buyer cannot be prosecuted for criminal facilitation of a sale, even though the buyer knows he or she is rendering aid to the seller, provides the "means or opportunity," and makes the drug transaction possible (*see* Penal Law § 115.00 [1]). As such, an agent acting as the buyer's proxy cannot be guilty of facilitating a criminal sale of drugs as he is

acting on behalf of a party who has been absolved of the crime of facilitation.[1] We held in *People v Andujas* that "[t]he [agency] defense simply reflects the logical proposition that if a defendant is acting solely in a capacity which is inherently inconsistent with being a seller—i.e., acting as an agent for the buyer—he cannot be a seller" (79 NY2d 113, 118 [1992]).

The majority takes the contradictory position that an intermediary can be aligned solely with the buyer and provide no aid to the seller for the purposes of the sale, while simultaneously being guilty of criminally facilitating the seller.[2] Both a buyer and his agent cannot be guilty of aiding the seller given our common-law holdings and the legislature's decision to leave the "agency defense inviolate" (*Roche*, 45 NY2d at 84). We recognized in *Roche* that "[the legislature's] acceptance of the [agency] defense represents a calculated and ameliorative judgment not to impose such penalties upon a person who merely facilitates the acquisition of drugs by a purchaser" (*id.*).

Furthermore, the majority's holding implies that an intermediary of the buyer and seller who requests an agency defense charge will automatically be deemed guilty of criminal facilitation. Asking for an agency charge, in some ways, is an admission by the defendant that he or she played a role in the drug transaction and that, in itself, may be enough for a jury to determine that the defendant facilitated the sale of drugs. This result conflicts with the determination that a defendant who is deemed an agent of the buyer stands in the shoes of the buyer and cannot be more culpable under the law (*see Roche*, 45 NY2d at 83).

Consistent with our previously stated rationale for the agency defense, I would reverse defendant's conviction for criminal facilitation; therefore, I respectfully dissent.

---

**1.** The majority's concern that agents of the buyer who never handle the drugs can escape all criminal liability did not alarm courts who first applied the agency defense when criminal facilitation was not even a statutory offense (*see e.g. People v Lindsey*, 12 NY2d 958 [1963], *affg* 16 AD2d 805 [2d Dept 1962]).

**2.** The absence of the term "sell" from the facilitation statute offers no support to the majority, and one would not expect "sell" to be there. Moreover, any offense, including the sale of narcotics, can be substituted for the term "crime" in the text of the statute (*see* Penal Law § 115.00).

Judges CIPARICK, READ, SMITH and PIGOTT concur with Judge GRAFFEO; Chief Judge LIPPMAN dissents and votes to reverse in an opinion.

Order affirmed.