People v Vickers (2019 NY Slip Op 00496)





People v Vickers


2019 NY Slip Op 00496


Decided on January 24, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 24, 2019

108193

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
ROBERT VICKERS, Also Known as RASHAD ABDUR-RAHMAN, Appellant.

Calendar Date: December 12, 2018

Before: Clark, J.P., Mulvey, Devine and Rumsey, JJ.


George J. Hoffman Jr., East Greenbush, for appellant.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.



MEMORANDUM AND ORDER
Mulvey, J.
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered January 7, 2016, upon a verdict convicting defendant of the crime of criminal sale of a controlled substance in the third degree (six counts).
Following a seven-month investigation beginning in the summer of 2013 and ending in March 2014, as relevant here, defendant was charged in three indictments, later consolidated, with six counts of criminal sale of a controlled substance in the third degree [FN1]. The charges stem from defendant's sale of heroin between September 2013 and January 2014 to a detective with the City of Albany Police Department (hereinafter APD) who, working as an undercover officer, made 11 controlled purchases of heroin from defendant. The transactions were captured on recording equipment and occurred under surveillance by numerous law enforcement officers. The undercover officer had received defendant's cell phone number from a confidential informant (hereinafter CI) who was working with the APD on the investigation into defendant's narcotics activities; according to the officer, the CI was not present at any of the drug sales. The CI was also simultaneously working on an investigation being conducted by members of the New York City Police Department (hereinafter NYPD), among other agencies, with assistance from the APD, into an unsolved 1972 murder of two police officers for which defendant was a suspect.[FN2]
At trial, defendant admitted providing the heroin to the undercover officer, but advanced an agency defense and asserted that he had been entrapped by police because he was [*2]suspected of being involved in the police murders. The jury convicted defendant of all six counts. Following his unsuccessful motion to set aside the verdict, County Court imposed on each conviction a seven-year sentence, followed by two years of postrelease supervision, and ordered that the sentences on the first three counts were to be served consecutively for an aggregate sentence of 21 years, and that the sentences on the remaining three counts were to be served concurrently. Defendant appeals.[FN3]
We affirm. Defendant challenges the legal sufficiency of the evidence and also contends that the verdict was contrary to the weight of the evidence. Specifically, he argues that the People failed to prove that he did not act as an agent for the buyer, and that the jury should have concluded that he had been induced by police to commit the drug sales and, therefore, that he had been entrapped. Initially, although defendant moved for a trial order of dismissal, he only argued that the affirmative defense of entrapment had been established. As defendant did not raise the arguments now advanced regarding his agency defense, his challenge to the legal sufficiency of the evidence that he did not act as the buyer's agent is not preserved for our review (see People v Hawkins, 11 NY3d 484, 492-493 [2008]; People v Roulhac, 166 AD3d 1066, 1067 [2018], lv denied ___ NY3d ___ [Dec. 31, 2018]). "We will nevertheless evaluate whether the elements of the charged crimes were proven beyond a reasonable doubt upon our weight of the evidence review" (People v Cruz, 152 AD3d 822, 823 [2017], lv denied 30 NY3d 1018 [2017]; see People v Scippio, 144 AD3d 1184, 1185 [2016], lv denied 28 NY3d 1150 [2017]).
The People were required to prove that defendant knowingly and unlawfully sold a narcotic drug, heroin (see Penal Law §§ 15.05 [2]; 220.39 [1]) and, as defendant asserted an agency defense, the People were also required to prove that he had not acted "solely as the agent of a buyer" (People v Watson, 20 NY3d 182, 185 [2012] [internal quotation marks and citation omitted]; see People v Valentin, 29 NY3d 150, 155 [2017]). Defendant admitted at trial that he provided heroin to the undercover officer, but argued that he had acted as an agent of the officer, the buyer, in procuring heroin for him and that his transfer of drugs was not done with intent to sell heroin (see Penal Law §§ 220.00 [1]; 220.39). "Under the agency doctrine, a person who acts solely as the agent of a buyer in procuring drugs for the buyer is not guilty of selling the drug to the buyer, or of possessing it with intent to sell it to the buyer[,] . . . [which] is generally a factual question for the jury to resolve on the circumstances of the particular case" (People v Peterkin, 135 AD3d 1192, 1192 [2016] [internal quotation marks and citations omitted]; see People v Lam Lek Chong, 45 NY2d 64, 73 [1978], cert denied 439 US 935 [1978]; People v Jones, 77 AD3d 1170, 1172 [2010], lv denied 16 NY3d 896 [2011]). An agency defense is "not a complete defense[,]" but, instead, "permit[s] the jury to find [a] defendant [to be] an agent of the buyer, rather than [an agent of the] seller, and treat him [or her] accordingly" (People v Davis, 14 NY3d 20, 24 [2009]; see People v Vickers, 156 AD3d 1236, 1237 [2017], lvs denied 31 NY3d 980, 988 [2018]). Assertion of this defense requires the jury to consider several factors, including "the nature and extent of the relationship between the defendant and the buyer, whether it was the buyer or the defendant who suggested the purchase, whether the defendant has had other drug dealings with this or other buyers or sellers and, of course, whether the defendant profited, or stood to profit, from the transaction" (People v Lam Lek Chong, 45 NY2d at 75; accord People v Watson, 20 NY3d at 186; People v Vickers, 156 AD3d at 1237; People v Peterkin, 135 AD3d at 1192).
We are not persuaded that the jury's rejection of the agency defense was against the weight of the evidence. The trial testimony established that, after APD officers obtained information from several sources that defendant was selling drugs, they arranged for the CI to make contact and develop a relationship with defendant under the ruse that they were cousins. The CI befriended defendant and suggested that if he helped the CI expand his drug business in Saratoga County where defendant resided, the CI would help defendant expand his heroin business in Albany County. The CI introduced defendant to a heroin supplier, from whom [*3]defendant thereafter obtained some of the heroin he sold, although defendant's conversations with the CI reflected that defendant had ready access to other suppliers. The CI referred the undercover officer to defendant, representing that the officer was his brother-in-law and telling defendant that the officer was a heroin user and potential customer. It was undisputed that defendant did not previously know the officer or have any relationship with him aside from these drug sales. To cut the CI out of the picture, the officer asked defendant not to tell the CI about their drug transactions. After that introduction, the officer communicated directly with defendant to arrange the heroin transactions, calling defendant's cell phone or home phone and, likewise, defendant often called the officer directly on his cell phone to arrange sales. The CI was not involved or present when defendant met up with the officer to take his order for heroin and collect the cash or when defendant returned to supply the requested heroin to the officer. The officer testified that defendant was not supplying the officer with heroin as a favor, and that defendant never claimed to be doing so. While the officer called defendant to set up the first controlled buy, defendant thereafter often called the officer to advise him that he had heroin, quoting a price, and initiated 5 of the 11 sales. The testimony and recorded calls reflect that defendant engaged in "salesman-like behavior" touting the price and quality of the heroin, and defendant usually required the officer to provide gas money when he delivered the heroin (see People v Jones, 77 AD3d at 1172).
The testimony, including defendant's own account, established that he benefited and profited from the transactions with the officer. To that end, defendant collected enough money from the officer to enable his purchase of the requested quantity of heroin for the officer, leaving extra money to purchase heroin for himself and the friend who drove him to the transactions. Indeed, defendant is heard on one video recording discussing his profits, explaining that his practice was to sell heroin for a set price that was more than the price he paid to purchase it from his suppliers. The trial testimony also contained several accounts that defendant had previously and contemporaneously sold heroin to other buyers, including one recorded phone call in which defendant took an order for 15 bags of heroin from another buyer (see People v Valentin, 29 NY3d at 156). A long-term friend of defendant testified that she had purchased heroin from defendant several times per week beginning in the mid-1990s until 2001, and then resumed buying heroin from him on a weekly basis in 2012 up until defendant's March 2014 arrest; she testified that defendant also sold drugs to her sister, her cousin, friends and other addicts. A former City of Saratoga Springs police investigator testified that a CI had engaged in a controlled buy of narcotics from defendant in 2001, which was not prosecuted because the CI went to prison.
Defendant testified, in contrast, that he was providing heroin to the undercover officer as a favor to him, and that he did so because the CI had represented that the officer was a sick addict who was being harassed by other dealers. Defendant claimed that the CI constantly spoke to him about taking care of the officer's heroin needs. Defendant's account that, despite his own heroin habit and financial circumstances, he repeatedly drove from Saratoga County to Albany County, and then to suppliers, to provide the officer with heroin as a favor to the officer was not believable, particularly given that defendant had no prior relationship with the officer and they had no contact aside from the heroin transactions.
Moreover, defendant admitted that he used some of the money provided by the undercover officer to purchase heroin for himself, or pooled his money with the officer's buy money to get a discount and purchase a larger quantity of heroin so he could keep some for himself. Notably, profit need not be pecuniary and includes transactions in which a defendant "stand[s] to benefit from the underlying sale" in other ways, including getting cheaper or free drugs for himself or herself and for friends (People v Robinson, 123 AD3d 1224, 1226 [2014], lvs denied 25 NY3d 992, 993 [2015]). The benefits that defendant expected and received from these transactions further established that he did not act "solely in the interests of" (People v Watson, 20 NY3d at 191) or "solely as the agent of [the] buyer in procuring drugs for the buyer" (id. at 185 [internal quotation marks and citation omitted]). "To the extent that defendant offered a different version of certain events and alternate interpretations of the evidence presented, we defer to the jury's credibility determinations, given its opportunity to hear the testimony and [*4]observe the witnesses' demeanor" (People v Jones, 77 AD3d at 1172 [citation omitted]). We note that much of defendant's testimony suggested that he provided heroin to the officer as a favor to the CI, because the CI was giving him cheap or free heroin for his own use as well as cash, and that the CI provided heroin for four or five of the sales to the officer and took the buy money. This account, if credited, would establish that defendant was acting as the agent of the seller, which does not support an agency defense (see People v Argibay, 45 NY2d 45, 50 [1978] cert denied sub nom. Hahn-DiGuiseppe v New York, 439 US 930 [1978]; People v Jones, 180 AD2d 650, 651 [1992]). Moreover, defendant's claim that the CI supplied the heroin and took the sale proceeds was not supported by any other testimony and was contradicted by the officer's testimony that police followed defendant when he left to get heroin for the officer, and that defendant did not meet up with the CI to obtain the heroin.
In the end, the jury rejected defendant's agency defense after resolving credibility issues presented by the conflicting testimony. Evaluating the evidence in a neutral light — including evidence of defendant's other drug selling, his profits from the transactions, that his relationship with the officer was limited to drug transactions, his course of conduct during the recorded transactions and the recorded conversations reflecting defendant's salesman-like behavior — we do not find that the jury's factual finding that defendant was not merely doing a friend a favor, and its rejection of the agency defense, was against the weight of the credible evidence (see People v Vickers, 156 AD3d at 1237; People v Peterkin, 135 AD3d at 1192-1193; People v Vanguilder, 130 AD3d 1247, 1249-1250 [2015], lv denied 27 NY3d 1008 [2016]; People v Johnson, 91 AD3d 1115, 1117 [2012], lv denied 18 NY3d 959 [2012]).
Nor are we persuaded that defendant proved the affirmative defense of entrapment by a preponderance of the evidence (see Penal Law §§ 25.00 [2]; 40.05). Specifically, defendant was required to prove that "(1) he was actively induced or encouraged to commit the offense by a public official; and (2) such inducement or encouragement created a 'substantial risk' that the offense would be committed by defendant who was not otherwise disposed to commit it" (People v Brown, 82 NY2d 869, 871 [1993], quoting Penal Law § 40.05; accord People v Jones, 77 AD3d at 1172; see People v Figueroa, ___ AD3d ___, ___, 2018 NY Slip Op 08372, *1 [2018]). "Whether a defendant is predisposed to commit an offense or was induced to commit the offense is a question of fact" (People v McGee, 49 NY2d 48, 61 [1979] [citations omitted]; accord People v Jones, 77 AD3d at 1172). In arguing that he was entrapped, defendant points to the CI befriending him as a long-lost cousin, giving him cash and cheap or free heroin to feed his addiction, providing him with a cell phone, connecting him with a supplier and introducing him to the officer as an addicted relative to whom he could sell heroin. However, the testimony of numerous officers "demonstrates that they merely afforded defendant an opportunity to commit the [drug sales]," and "[m]erely asking a defendant to commit a crime is not such inducement or encouragement as to constitute entrapment" (People v Brown, 82 NY2d at 871-872; see People v Figueroa, 2018 NY Slip Op at *1; People v Jones, 77 AD3d at 1172; People v Delaney, 309 AD2d 968, 970 [2003]).
Moreover, there was extensive testimony and ample evidence supporting the conclusion that defendant was predisposed to drug selling, in that he had been selling drugs for many years and was doing so prior to meeting the CI. The video recordings established that he was already a sophisticated and experienced drug seller before the police and the CI provided an opportunity to sell to the undercover officer (see People v Jones, 77 AD3d at 1172-1173; see also People v Calvano, 30 NY2d 199, 203-204 [1972]). The video recordings dispel the claim that defendant was a drug addict acting out of desperation. The only proof that defendant was "actively induced or encouraged" by the CI to engage in drug sales or that the CI provided the heroin, rather than merely provided an opportunity to expand the geographic area of defendant's ongoing drug dealing business, came from defendant, and the jury was entitled to reject his account (People v Skervin, 17 AD3d 771, 771-772 [2005] [internal quotation marks and citations omitted], lv denied 5 NY3d 856 [2005]; see People v Velasquez, 77 AD3d 503, 503 [2010], lv denied 15 NY3d 956 [2010]).
Viewing the evidence and testimony in the light most favorable to the People and affording them the benefit of every favorable inference, we find there was "a valid line of reasoning and permissible inferences from which the finder of fact could have rationally concluded that the elements of the crime[s] were established beyond a reasonable doubt" (People v Kancharla, 23 NY3d at 302; see People v Delamota, 18 NY3d 107, 113 [2011]; People v Haggray, 164 AD3d 1522, 1524 [2018], lv denied ___ NY3d ___ [Nov. 30, 2018]). Further, deferring to the jurors' "opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Bleakley, 69 NY2d 490, 495 [1987]), we conclude that, while a different verdict would not have been unreasonable, upon weighing the conflicting testimony and competing inferences, "the jury was justified in finding the defendant guilty beyond a reasonable doubt" (People v Kancharla, 23 NY3d at 303 [internal quotation marks and citation omitted]).
We are similarly not persuaded by defendant's contention that egregious police misconduct warrants a reversal of his convictions pursuant to People v Isaacson (44 NY2d 511 [1978]). Defendant argues that police, frustrated with their inability to prosecute him for the 1972 murders, manufactured a scenario to have him sell narcotics to an undercover officer using the CI to befriend him with a ruse, provided him with a cell phone, introduced him to a supplier and promised him drugs to feed his addiction. He asserts that the CI pressured him to sell heroin to his addicted relative. While police used a ruse in order to make controlled drug purchases and facilitated defendant's drug selling, their actions did not constitute police misconduct or offend principles of due process (see id. at 520-522). Contrary to defendant's contentions, police, made aware that defendant was engaged in drug dealing, "merely involved themselves in [defendant's] ongoing criminal activity" and were not particularly persistent and did not engage in "criminal or improper conduct" (id. at 521). Further, defendant did not exhibit reluctance or unwillingness to engage in the drug sales and was not promised exorbitant gain, and there was no evidence to support the conclusion that the police motive was solely to obtain a conviction rather than "to prevent further crime" (id.). There was nothing improper about the fact that the APD was assisted by NYPD officers in this investigation, or about the NYPD simultaneously conducting a separate investigation of defendant and other suspects concerning the murders. Accordingly, we find that defendant has not shown that his due process rights were violated by police actions (see id.; People v Kass, 59 AD3d 77, 82 [2008]; People v Spence, 39 AD3d 673, 673-674 [2007], lv denied 9 NY3d 882 [2007]; People v Keyes, 193 AD2d 936, 937 [1993], lv denied 82 NY2d 756 [1993]).
Finally, defendant argues that the sentence should be reduced in the interest of justice in view of the fact that he was a 68-year-old heroin addict and that the sentence was influenced by the testimony regarding the investigation into his role in the uncharged murders. However, County Court imposed a sentence that was less than the maximum consecutive sentences permitted for these separate drug sales (see Penal Law §§ 70.25 [2]; 70.70 [1], [2] [a] [i]) and, in doing so, the court made clear that the sentence would be based solely on the record regarding these drug sales and would not be influenced by the uncharged crimes. The court took into account the mitigating factors, as well as defendant's ongoing drug dealing and criminal history, which includes a prior prison escape. Although defendant points to the lower sentence that he received for his two prior drug sale convictions emanating from this same investigation (People v Vickers, 156 AD3d at 1239), County Court was entitled to rely on the trial record in this prosecution, including the recordings, which reflects the extent of danger that he poses to the community stemming from his drug dealing, his disregard for others and his criminal character. Our review of the record discloses neither "an abuse of discretion nor extraordinary circumstances warranting a reduction of the sentence in the interest of justice" (People v Babcock, 152 AD3d 962, 968 [2017], lv denied 30 NY3d 947 [2017]). Defendant's remaining claims have been reviewed and found to be lacking in merit.
Clark, Devine and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: A seventh count contained in a February 2015 indictment pertaining to the sale of heroin in March 2014 was dismissed prior to trial.

Footnote 2: The trial testimony established that defendant had never been charged with those murders.

Footnote 3: This Court affirmed defendant's earlier conviction of two counts of criminal sale of a controlled substance in the third degree stemming from his sale of heroin on two other occasions during this investigation (People v Vickers, 156 AD3d 1236 [2017], lvs denied 31 NY3d 980, 988 [2018]).